UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MACEO WILLIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 15-CV-3037 |
| ) | |
| GREG SCOTT, DALE KUNKEL, ) | |
| MEDICAL DIRECTOR ) | |
| BEDNARZ, RESIDENT ) | |
| WILLIAMSON, SHARLENE ) | |
| CARAWAY, JOSEPH HANKINS, ) | |
| AND J.R. REID, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He pursues claims arising from an alleged assault against him by his roommate, the punishment he received for fighting, and an alleged delay in medical care for the injuries he suffered.

Defendants have filed motions for summary judgment. For the reasons below, Plaintiff's failure to protect claim survives summary judgment against Defendants Hankins, Kunkel, Caraway, and

Scott.  Summary judgment on Plaintiff's procedural due process claim against Defendants Caraway, Reid, and Hankins is denied with leave to renew.  Summary judgment on Plaintiff's claim for delay of medical care is granted.

## Facts

On December 4, 2014, Plaintiff was transferred from the Illinois Department of Corrections to the Rushville Treatment and Detention Center.  After the initial intake procedures, Plaintiff was placed in a room with resident Antonio Williamson on December 10, 2014.  According to Plaintiff, resident Williamson was not happy about moving to the top bunk and behaved strangely from the start, spying on Plaintiff during the night, but Plaintiff did not alert Defendants or any other employees to Plaintiff's concerns.  (Pl.'s Dep. 13-15.)

In the early morning hours of December 16, 2014, while Plaintiff and resident Williams were locked in their room, resident Williamson hopped down from his bunk and put his shoes on, ready to fight.  Plaintiff then put his pants on, whereupon Williamson said, "I'm gonna fight you" and "bum-rushed Plaintiff football style." (Pl.'s Dep. 20.)  Plaintiff fell back on the bed with

Williamson on top while Williamson punched Plaintiff. (Pl.'s Dep. 62.) In self-defense, Plaintiff pressed a pen in Williamson's side. (Pl.'s Dep. 63-64.) Plaintiff called to a guard for help, and both Plaintiff and Williamson were taken to the healthcare unit. (Pl.'s Dep. 67.)

The parties dispute what precipitated the fight and whether Plaintiff stabbed Williamson in the eye with a pen or just pressed the pen in Williamson's side, but factual disputes are resolved in Plaintiff's favor at this stage. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Medical records show that Plaintiff was seen at the healthcare unit on December 16, 2014, at 3:15 a.m. The records state that Plaintiff had a 2.5 centimeter laceration on Plaintiff's right cheek and Plaintiff maintains he had a cut on his eyelid, bruises, and pain. Dr. Lochard, the facility's treating doctor, was notified, and Plaintiff was given Tylenol as needed. Gauze pads were applied to Plaintiff's wound every two hours. (Pl.'s 12/16/16 progress note, 65-2, p. 1; Pl.'s Dep. 25-26, 71-72.) At around 9:00 a.m. that morning, Dr. Lochard sutured Plaintiff's wound with four stitches. (Pl.'s Dep. 26, 71-71; Pl.'s 12/16/14 progress note, d/e 65-2, p. 2.)

After Dr. Lochard treated Plaintiff, Plaintiff was placed on "temporary special" status, which is akin to segregation. Plaintiff was given a notice to appear before the behavior committee, the disciplinary committee for the facility. The notice charged Plaintiff with fighting, but Plaintiff could not read the notice because Plaintiff did not have his eyeglasses. On December 17, 2014, Plaintiff appeared before the behavior committee and was read the notice. Plaintiff offered a written affidavit in his defense, but Defendants found Plaintiff guilty of fighting. The punishment was 30 days of "close status" and 90 days recommended for using the "black box" restraint during transports. The black box is a restraint attached between handcuffs which further restricts hand movement.

## Discussion

### I. Appointment of Counsel

Plaintiff's prior motions for appointed counsel were denied by Magistrate Judge Shanzle-Haskins on the grounds that Plaintiff appears competent to proceed pro se in light of the relatively simple nature of Plaintiff's claims. (6/26/15 text order, citing <u>Pruitt v.</u>

Mote, 503 F.3d 647, 654-55 (7th Cir. 2007).  This Court agrees. The Court does not have the authority to require an attorney to accept pro bono appointment on a civil case such as this.  Pruitt, 503 F.3d at 653.  In determining whether the Court should attempt to find an attorney to voluntarily take the case without pay, the question is "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?"  Id. at 654-55 (7th Cir. 2007). Plaintiff's pleadings adequately communicate the facts underlying his claim and demonstrate some knowledge of the applicable law and procedure.  Plaintiff already has personal knowledge of many of the relevant facts and has been able to obtain relevant information in discovery.  Additionally, Plaintiff has his high school degree and certificates in automotive servicing, industrial electronics, computer science, and advanced electronic technology.  (Pl.'s Dep. 8.)  Plaintiff also has significant experience litigating in federal court, according to a search of computerized records.  On this record, Plaintiff appears competent to proceed pro se.

## II.  Failure to Protect Claim

To succeed on his claim for failure to protect, Plaintiff must have evidence that resident Williamson posed a substantial risk of

serious harm to Plaintiff and that Defendants knew about and disregarded that risk. Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005).

Defendants do not argue that resident Williams did not pose a substantial risk of harm to Plaintiff. A rational juror could conclude that resident Williams did pose such a risk. The documents filed under seal show that Williamson had a long history of disciplinary problems, roommate problems, problems getting along with others, and problems with intimidation and aggression. (Sealed documents, d/e 82.) Plaintiff, by his own description, is an elderly man with diabetes and high blood pressure, vision impairment, and no record of disciplinary problems. (Pl.'s Dep. p. 12.)

Defendants argue that they played no role in rooming Plaintiff with resident Williams. However, Defendant Hankins admits that he was one of the rooming committee members who determined Plaintiff's room placement. (Defs.' Resp. to Pl.'s First Interr., d/e 77-1, para. 1.) Defendants Caraway, Scott, and Kunkel were copied on the rooming committee minutes, though they were not members on the rooming committee. Simply receiving a copy of the minutes

would not be enough to allow an inference of personal responsibility, but the Court does not see the minutes from the December 3, 2014, rooming committee meeting in the record. The minutes skip from November 19, 2014 to December 17, 2014. Nor are there any documents or affidavits explaining the reasons for Plaintiff's placement with resident Williamson or when that decision was made. If the decision was not made at a rooming committee meeting, then when was the decision made, who made the decision, and why? Additionally, Plaintiff contends that he has not been provided the facility's procedures regarding rooming placements, which he believes will allow an inference of personal responsibility.

In short, Defendants Hankins, Scott, Kunkel and Caraway have not met their summary judgment burden on the failure to protect claim. Defendant Hankins was admittedly involved in the rooming decision. The record is not developed enough to rule out the involvement of Defendants Scott, Kunkel, or Caraway. A determination of qualified immunity also cannot be made without a more developed record.

The other Defendants—Reid and Bednarz—had no involvement in the rooming decision. Defendant Reid was on the

behavior committee and is the Director of Training and Research. Defendant Bednarz is the Medical Director. Summary judgment will, therefore, be granted to Defendants Reid and Bednarz on Plaintiff's failure to protect claim.

### III. Procedural Due Process Claim

Summary judgment appears to be warranted for Defendants on Plaintiff's procedural due process claim, but the Court needs more information.

Plaintiff was punished for fighting as a result of the incident. The punishment was 30 days of close status and the application of the black box on transports for 90 days. After 30 days on close status, Plaintiff was to be returned to general status with all of its privileges.

The question is what did close status mean at the time? The Seventh Circuit has already held that close status at the Rushville Treatment and Detention Center is not a significant enough deprivation to trigger procedural due process concerns. Miller v. Dobier, 634 F.3d 412 (7th Cir. 2011). In Miller, the plaintiff on close status was "free to leave his cell for most of the day, to receive visitors, and in this and other respects to avoid extremes of close

confinement such as are encountered in segregation units." Id. Miller also held there is no constitutionally protected liberty interest in avoiding the "black box" restraints or other restraints during transport, even for civil detainees. Id. at 414-15.

According to Defendant Hankins, residents on close status during the relevant time were generally permitted access to the day room one hour during the breakfast meal, after the "noon count" until 2:45 p.m., and one hour during the evening meal. Residents on close status were also allowed to buy from the commissary, have one-hour visits, have a three-day change of clothing, and make outgoing phone calls. (Hankins Aff. paras. 17-19.) However, Defendant Hankins does not know if Plaintiff was permitted these privileges, and these assertions are not part of Defendants' proposed undisputed facts. (Hankins Aff. paras. 19.)

Plaintiff asserts in his affidavit that he was kept in the equivalent of segregation with no power, no electronics, and no property for one year. (Pl.'s Aff., footnote 1, d/e 121, p. 5.) However, that was not the punishment imposed in December 2014 and that claim is not before the Court. The punishment relevant to this case is the punishment imposed in December 2014—30 days

close status and 90 days black box transport. If Plaintiff received additional punishment for other rule infractions, those incidents are not a part of this case. For example, Defendant Hankins avers that Plaintiff was given another 30 days close status for refusing to house with a roommate. (Hankins Aff. para. 19.) Plaintiff has filed motions seeking a court order that he be placed in a single room, which have been denied because Plaintiff has no constitutional right to a single room. (6/26/15 text order; 7/8/2015 text order). This case is not about Plaintiff's housing refusals.

On this record, Plaintiff's procedural due process claim appears foreclosed by <u>Miller</u>. However, the Court needs to know specifically what restrictions were placed on Plaintiff during his 30 days of close status in order to determine whether the punishment was significant enough to trigger procedural due process protections. Defendants do not appear to know what restrictions were placed on Plaintiff. Plaintiff should be able to inform the Court what those restrictions were since he personally experienced them. Accordingly, Defendants motion for summary judgment on the procedural due process claim is denied with leave to renew.

Plaintiff will be directed to submit an affidavit setting forth what restrictions he experienced on close status.

## III. Lack of Medical Care Claim

Plaintiff argues that he should have been taken to the emergency room rather than made to wait six hours for four stitches.  However, Plaintiff has no evidence that this decision was a substantial departure from accepted professional judgment or that Plaintiff was at any risk of harm from waiting.  Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009)("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.")  In any event, Dr. Lochard, who is not a Defendant, would have been the person making that decision.  Dr. Lochard was the person contacted when Plaintiff was brought to the health care unit.  No evidence suggests that Dr. Bednarz, who was the facility's Medical Director, was involved in or responsible for that decision.  No evidence suggests that any of the other Defendants were responsible for that decision either.  Summary judgment is granted to Defendants on this claim.

**IT IS ORDERED:**

(1)  Plaintiff's motion for the appointment of counsel is denied (123).

(2)  The motion to strike Plaintiff's sur-reply is denied as unnecessary (124).  Plaintiff's pleading does not present new arguments or facts.

(3)  The motions for summary judgment are granted in part and denied in part (65, 76).  Summary judgment is granted to all Defendants on Plaintiff's claim for deliberate indifference to his injuries after the alleged assault by resident Williams.  Summary judgment is granted to Defendants Reid and Bednarz on Plaintiff's failure to protect claim.  Summary judgment is otherwise denied.

(4)  **By March 13, 2017, Plaintiff is directed to file an affidavit stating, under penalty of perjury, the restrictions placed on him on his 30 days of close status imposed on December 17, 2014.  In particular, Plaintiff must state whether**

**he was allowed out of his room daily and for how long, whether he was provided an opportunity for visits and to make outgoing phone calls, and whether he was provided access to the commissary, a three-day change of clothing, and showers.**

(5)  This case is referred to the Magistrate Judge for the purpose of conducting a settlement conference.

(6)  The clerk is directed to notify the Magistrate Judge of the referral of this case for a settlement conference.

(7)  The clerk is directed to terminate Defendant Bednarz.

**ENTERED:  February 22, 2017**

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
U.S. DISTRICT JUDGE
